# United States Court of Appeals
## For the First Circuit

No. 07-2423

UNITED STATES OF AMERICA,

Appellee,

v.

HERIBERTO ARROYO,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. F. Dennis Saylor IV, U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin, Circuit Judge,
and Schwarzer,[*] District Judge.

Robert L. Sheketoff for appellant.
Kelly Begg Lawrence, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

October 27, 2008

---

[*]Of the Northern District of California, sitting by designation.

**BOUDIN**, **Circuit Judge**.  Heriberto Arroyo, formerly a police officer in the city of Worcester, Massachusetts, was convicted by a jury on two different drug conspiracy counts.  On this appeal, he challenges his sentence on two grounds, one legal and one mostly factual.  Since the latter turns in part on sufficiency of the evidence, we recite the evidence in the light most favorable to the government.  United States v. David, 940 F.2d 722, 732-33 (1st Cir. 1991), cert. denied, 504 U.S. 955 (1992).

Thomas Vigliatura, an amateur bodybuilder and owner of T Vig's Sports Supplements, ran a drug ring from the T Vig's store and out of his home in Worcester.  Arroyo, then a police officer, purchased GHB and GBL for personal use and to provide to friends.  GHB (gamma-hydroxybutyric acid) is a regulated drug with limited medical uses that is sold illegally for its euphoric and body-building qualities.  GBL (gamma butyrolactone) is an associated drug that converts to GHB on ingestion.

Arroyo also purchased cocaine from Vigliatura and used it with him.  In addition, Arroyo at various times possessed both cocaine and ecstasy (an illegal euphoric drug) and used the drugs with various other individuals.  In July 2005, both Arroyo and Vigliatura were indicted, with several others, in a multi-count federal indictment; two of the counts named Arroyo.

Count I charged Arroyo, Vigliatura and two other defendants with conspiring to distribute, and to possess with

intent to distribute, GHB and GBL in and around Worcester, in Massachusetts, and elsewhere from around summer 2000 to around summer 2004. Count II charged Arroyo, Vigliatura and one of the other count I defendants with conspiring to possess cocaine and ecstasy in Massachusetts and elsewhere during the same time period. Both counts charged violations of 21 U.S.C. § 846 (2006), which criminalizes drug conspiracies.

At trial, the government offered evidence from Vigliatura's former girlfriend as to Vigliatura's sale of GHB and GBL to Arroyo, Arroyo's social use of GHB and GBL and cocaine, and Arroyo's supply of the drugs to others. Additional witnesses told of Arroyo's possession of cocaine or ecstasy or both on various occasions; one witness (a Vigliatura customer and later a distributor of GHB and GBL) had seen Arroyo at Vigliatura's office with a bag of white powder and a scale and testified that Vigliatura had told the witness that Arroyo was there "to measure up some cocaine."

The jury convicted on count I only as to the lesser included offense of conspiracy to possess GHB and GBL; the jury also convicted on count II, which was already limited to possession. The district court, rejecting a defense claim at sentencing that only one conspiracy existed, sentenced Arroyo to nine months in prison on each of the two counts of conviction to be

served concurrently, a year of supervised release, and on each count a $1,000 fine and a $25 special assessment--both mandatory.

The guideline sentencing range for the two possession conspiracies taken together, see U.S.S.G. § 3D1.2(b), keyed to cocaine as the most serious drug, id. § 2D2.1, would have been zero to six months (because Arroyo had no prior criminal convictions). Id. ch. 5, pt. A (sentencing table). The district court rejected possible adjustments to the offense level but chose to depart upward from the guideline sentence, justifying the departure on two grounds: first, because Arroyo was a police officer, and second, because the quantity of drugs and other circumstances indicated that Arroyo had intended to share the drugs with others.

On appeal, Arroyo's main challenge is to the decision to impose a non-guideline sentence based in part on Arroyo's occupation as a police officer.[1] The gist of the argument is that it is irrational, thus certainly unreasonable, and a violation of his substantive due process and equal protection rights under the Constitution to give Arroyo a higher sentence based on his occupation. Some judges, Arroyo adds, might well have given a police officer a sentence below the guideline range, citing the tensions of police work.

---

[1]To the extent that the district court relied upon the sharing of the drugs, Arroyo makes no objection. In fact, the guideline commentary suggests that supplying drugs to others may warrant a departure. See U.S.S.G. § 2D2.1 cmt. n. 1.

Arroyo says that his constitutional challenge should be reviewed de novo, while the government says that review should be for plain error since he made no constitutional claim below. It does not matter in this instance. The district judge's determination was not irrational. And, apart from any constitutional constraint or legal infirmity, a non-guideline sentence is tested primarily under a generous abuse of discretion standard, Gall v. United States, 128 S. Ct. 586, 591 (2007), which the sentence meets.

The guidelines identify various sentencing facts and factors, some of which are encouraged or discouraged bases for adjusting a sentence, e.g., U.S.S.G. §§ 5H1.2, 5H1.7; others may be forbidden, e.g., id. § 5H1.10; still others require adjustments up or down in calculating the guideline range, see, e.g., id. § 3A1.1. Pertinently the guidelines say that education and vocational skills are "not ordinarily relevant" except where a defendant used special skills or abused a position of trust, see id. §§ 3B1.3, 5H1.2.

Here, the district court did not find either a special skills or abuse of a position of trust adjustment appropriate; Arroyo suggests that any other consideration of occupation is irrational. But even without abuse of authority or special skills, the district court plausibly found that in this instance the very bad example set by having a police officer buying and making available illegal drugs enhanced the seriousness of the crime.

That judgment is not irrational. Indeed, the judge is expected to consider the history and characteristics of the defendant and the need for the sentence to reflect the seriousness of the offense and promote respect for the law. See 18 U.S.C. § 3553(a) (2006).

The district judge did not adopt an abstract general rule that every police officer who commits a crime gets a higher sentence. Arroyo had in fact worn his uniform for some of the purchases, and some of those who obtained drugs from him socially knew his position and could have deemed his furnishing of the drugs as trivializing the seriousness of the offense--enhancing a risk already present where use is recreational and liable to be brushed off as nothing to worry about.

Nor did "occupation" stand alone in the district court's calculus. The district judge mentioned the quantity of drugs--this was certainly not a case of one-time use or use during a brief period--and also the fact that Arroyo did not merely possess the drugs but made them available to others, even if he did not take payment for them. So not only was Arroyo's occupation plausibly an aggravating factor, but it was only one of several related circumstances that seemed to the judge to take this out of the mine run of cases where the conviction is for simple possession.

Arroyo may be right that other judges might choose to reduce the sentence for a police officer; he cites us to United States v. Mays, 470 F. Supp. 642 (S.D. Tex. 1979), where a court

refused to incarcerate two police officers who were convicted of killing a criminal suspect after a high speed car chase. Yet the possibility that a fact or factor like occupation cuts one way in one case and a different way in another means nothing, so long as a different context makes that sensible.

It is perhaps more troubling that on exactly the <u>same</u> facts another judge might have chosen <u>not</u> to impose an above guideline sentence. Yet this merely shows that rational judges can give somewhat different weight to the myriad incommensurable factors that may bear on sentencing. Perfect equality in result could be achieved only by rigidly binding guidelines and tight review--an approach with its own costs and one firmly rejected by the Supreme Court in a set of recent cases.[2]

Arroyo's independent second attack on the sentence is that the two separate conspiracies for which he was convicted were really one, and therefore it violated the Double Jeopardy Clause of the Constitution to sentence him for both convictions.[3] <u>See</u> <u>United States</u> v. <u>Shea</u>, 211 F.3d 658, 673 (1st Cir. 2000), <u>cert. denied</u>,

---

[2]<u>See</u> <u>Gall</u>, 128 S. Ct. 586; <u>Kimbrough</u> v. <u>United States</u>, 128 S. Ct. 558 (2007); <u>Rita</u> v. <u>United States</u>, 127 S. Ct. 2456 (2007); <u>United States</u> v. <u>Booker</u>, 543 U.S. 220 (2005).

[3]Arroyo's brief says that it was erroneous to impose sentences for both counts, "and one of the convictions should be vacated," but counsel at oral argument stated that his "real double jeopardy argument is you can't double sentence for this," and there is no indication that he challenged the second conviction on double jeopardy grounds in the district court.

531 U.S. 1154 (2001). Little of consequence turns on this issue since the sentences were concurrent save for the double fine ($1,000 on each count) and assessment ($25 on each count), and the fine could easily have been the same if the conduct for the two conspiracies were included in a single count.

Arroyo is still entitled to review on his single conspiracy claim, cf. Rutledge v. United States, 517 U.S. 292, 302-03 (1996), but the relatively short argument in his brief pivots on this single, conclusory argument:

> The drug activity, possession of GHB, ecstasy, and cocaine, occurred during the same time frame, in the same district, among the same crowd (including three of the same named and indicted core co-conspirators), for the same purpose (to party), using the same means (sharing). The evidence used to prove the "conspiracies" was virtually identical.

This is the whole argument apart from citation to and quotation from general case law dealing with the question of one versus several conspiracies and a truncated version of the evidence presented in the fact section of the brief.

A defendant arguing for one rather than two conspiracies is ordinarily arguing that a reasonable fact finder could only conceive the pattern of events in a single way. David, 940 F.2d at 732-33. Drug conspiracies are rarely express and are usually inferred from an assemblage of conduct recounted through various witnesses. To support a single conspiracy argument would normally take a meticulous assembly of evidence (taken favorably to the

-8-

verdict) and its association with different conspiracy factors. Nothing like that is attempted by Arroyo in this case.

The government says that the issue has been forfeited because Arroyo was convicted by the jury (under a beyond a reasonable doubt standard) of two conspiracies, did not present this one conspiracy argument to the jury, and made it only to the sentencing judge--who employs a preponderance standard, United States v. Anderson, 452 F.3d 87, 92 n.3 (1st Cir. 2006). We need not resolve this objection, for Arroyo has not made an argument sufficiently complete to counter the government's position.

The government's brief conceded that the two conspiracy finding was a close call, but it argued in detail that the conspiracies differed as to the drugs and the likely geographic scope of the activities; that evidence indicated an overlap but not complete identity of conspirators; and that some of the incidents related only to one of the two supposedly separate conspiracies. The argument may be forced but is not frivolous, especially because assigning different conspiracy labels to complex overlapping drug activities is an imprecise art. See David, 940 F.2d at 732-35.

In scanting the issue in his opening brief and forgoing a reply, Arroyo's able and experienced counsel doubtless concluded that a $25 stake did not warrant detracting from Arroyo's main attack on the use of his occupation to increase the jail time imposed. Having concluded that the district judge's two

conspiracies determination is colorable, we think that Arroyo's summary argument against it is satisfied by a summary disposition, there being no conceivable threat of injustice.

Affirmed.