# United States Court of Appeals
## For the First Circuit

No. 07-1527

UNITED STATES OF AMERICA,

Appellee,

v.

SCOTT BOIDI,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Boudin and Lipez, Circuit Judges,

and Singal,* District Judge.

Robert L. Sheketoff with whom David R. Yannetti was on brief for appellant.
Randall E. Kromm, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief for appellee.

June 3, 2009

---

*Of the District of Maine, sitting by designation.

**BOUDIN**, <u>Circuit Judge</u>.  A federal jury convicted Scott Boidi on six criminal charges relating to his embezzlement of union funds and drug conspiracy; he was sentenced to concurrent 84 month sentences on two of the counts--racketeering and conspiracy to possess with intent to distribute drugs--and lesser concurrent sentences on other counts.  He now appeals, attacking the drug conspiracy conviction and (indirectly) two other convictions potentially dependant on the drug conspiracy conviction.  He does not contest his conviction on three counts that charged only embezzlement.

The facts, focusing on the drug conspiracy charge, are taken from the trial.  During the relevant period, approximately January 2000 through June 2002, Scott Boidi was the union business manager for Tunnel Workers Local 88 in Quincy--an elected position he had held since 1991--but some time in 2001 he developed a serious cocaine addiction.  He began to steal union funds to feed his drug habit, taking dues money from the union and seeking unwarranted reimbursements to buy cocaine.

Boidi's wife twice expelled him from the house and, not long after the second eviction, Boidi took up with Lynne DeMita, a childhood acquaintance.  In November 2001, Boidi moved into DeMita's home in Rockland, Massachusetts.  According to DeMita, they were together as a couple living in various locations until roughly May or June 2002.  At Boidi's trial, DeMita testified that

-2-

during their time together, Boidi bought cocaine daily, sometimes two or three times per day.

DeMita claimed to have been present "99% of the time" when Boidi bought the drugs. The purchases took place at various locations, including the union hall, her home in Rockland, a Copeland Street apartment in Quincy, friends' homes, and hotels. DeMita said that, while she never paid for the cocaine, Boidi gave it to her all the time and that he also shared with other friends including Steve Zigliano, Michael "Mickey" Cochran, Eddie Silva, Tommy Bellotti, and his brother Alan.

There was other uneven testimony as to Boidi's sharing. Cochran confirmed that he had used cocaine with Boidi, but he said that their use had been infrequent and he was unsure whether Boidi had ever provided the cocaine. Thomas Brennan said that he had used cocaine with Boidi but that Boidi did not provide it. Dominic Mazzeo testified to having shared cocaine that Boidi brought to the union hall.

Boidi and DeMita's usual suppliers were Rafael "Ralph" Soto and his friend Hector Vega. Soto said that he sold to Boidi repeatedly over the course of three or four months. For the first month and a half Boidi would buy three grams three times per day but purchases then slowed as Boidi ran short of funds; the largest amount he ever purchased at one time was fifteen grams, or half an ounce, which he explained by saying that he took "care of his

people that worked for him." Soto said that DeMita frequently was with Boidi during the purchases and that he had seen DeMita, Boidi, Belotti and Zigliano use the cocaine.

Vega, who sometimes worked as a runner for Soto, testified that he sold Boidi a minimum of three grams of cocaine per order, usually three to five days per week, one to three times per day over a period of three to four months. Vega said that Boidi was generally alone when he bought the cocaine, although he had once seen Boidi give some to another person. Vega also recalls conversations where he and Boidi discussed "stepping on" the cocaine (i.e., diluting it)--potentially for further distribution.

The sales eventually came to an end, and Boidi was committed at Bridgewater State Hospital from late March 2002 until mid-April 2002; he also received inpatient substance abuse treatment at Bournewood Hospital during most of June 2002, after which he received outpatient treatment. In July 2002 he took out a restraining order against DeMita, apparently claiming that she was harassing him. In due course, the embezzlement scheme unraveled and Boidi became the subject of extensive investigation.

By a nine-count superceding indictment on September 21, 2005, Boidi was charged with racketeering (count 1), 18 U.S.C. § 1962(c) (2006), three counts of embezzlement of union assets (counts 2-4), 29 U.S.C. § 501(c) (2006); conspiracy to possess with intent to distribute 500 or more grams of cocaine (count 5), 21

U.S.C. §§ 846, 841(b)(1)(B)(ii)(II) (2006), and use of a communication facility to facilitate a drug crime (count 6), 21 U.S.C. § 843(b). The remaining three counts are not pertinent.[1]

After a lengthy jury trial, Boidi was found guilty on the six counts just listed and given concurrent sentences of which the two longest were 84 months. Boidi now appeals, challenging only the district court's failure to give a requested lesser included offense instruction as to the drug conspiracy count; but he also argues that reversal on this conviction would bring down the RICO and communications facility convictions.

A "defendant may be found guilty of . . . an offense necessarily included in the offense charged," Fed. R. Crim. P. 31, and a defendant is entitled to such an instruction where (1) the lesser offense is "included" in the offense charged, United States v. Ferreira, 625 F.2d 1030, 1031 (1st Cir. 1980), (2) a contested fact separates the two offenses, id., and (3) "the evidence would permit a jury rationally to find [the defendant] guilty of the lesser offense and acquit him of the greater." Keeble v. United States, 412 U.S. 205, 208 (1973).

---

[1]Boidi was ultimately acquitted as to using and carrying a firearm during and in relation to a drug trafficking crime (count 7), 18 U.S.C. § 924(c)(1)(A), obstructing a proceeding of the National Labor Relations Board (count 8), id. § 1505, and persuading a person to lie to a federal grand jury (count 9), id. § 1512(b)(1).

Precedent says that we review de novo the decision whether to give a lesser included offense instruction. United States v. Flores, 968 F.2d 1366, 1367-68 (1st Cir. 1992). That is clearly right as to whether a second crime is a lesser included offense; some circuits then give deference to the district court's judgment as to whether the jury could rationally find the defendant guilty of the lesser offense but acquit him of the greater. E.g., United States v. Upton, 512 F.3d 394, 402 (7th Cir.), cert. denied, 129 S. Ct. 39 (2008). The district judge did not reach the latter issue here.

The government does not dispute that possession is a lesser included offense of possession with intent to distribute, e.g., Custis v. United States, 511 U.S. 485, 488 (1994); United States v. Ciampa, 793 F.2d 19, 27 (1st Cir. 1986), but says that conspiracy to commit each crime is distinguishable: it argues that an agreement to possess is a different agreement and not a lesser included version of an agreement to possess with intent to distribute. The two different agreements, it says, could easily turn on different evidence and involve different people.

The district court agreed that conspiracy to possess is not a lesser included offense of conspiracy to possess with intent to distribute, explaining that "it would be if we were talking about the substantive offenses" but that "the government is entitled to charge[,] at the risk of not being able to prove it, a

particular agreement as a conspiracy charge."  With more time to ponder the government's position than a trial judge fashioning an instruction in mid-trial, we take a different view.

The government's own position on the issue, although well argued here, has not been consistent.  In at least one case, United States v. Moran, Nos. 90-5024, 90-5025, 1991 WL 125461, at *4 (4th Cir. Oct. 24, 1991) (unpublished), the government took the position it urges here (and lost); in several others, it was content to concede the lesser conspiracy was included in the greater.  E.g., United States v. White, 972 F.2d 590, 596 (5th Cir. 1992), cert. denied, 507 U.S. 1007 (1993).

In all events, courts that have confronted this or comparable issues have regularly concluded or assumed that a less serious conspiracy can be a lesser included offense of a similar but greater one.  This is so both as to drug cases involving the same issue as our case[2] and as to cases (we list many in an

---

[2]United States v. Carroll, 140 F. App'x 168, 169 (11th Cir. 2005) (per curiam) (unpublished); United States v. Ruhbayan, 406 F.3d 292, 295-96 (4th Cir.), cert. denied, 546 U.S. 917 (2005); United States v. Araujo, No. 98-21008, 2000 WL 309408, at *1 (5th Cir. Feb. 28, 2000) (per curiam) (unpublished); United States v. Neely, No. 94-5107, 1996 WL 60329, at *2 (4th Cir.) (unpublished), cert. denied, 519 U.S. 861 (1996); United States v. Valencia, No. 94-10348, 1995 WL 444658, at *4 (9th Cir.) (unpublished), cert. denied, 516 U.S. 1001 (1995); United States v. Vaandering, 50 F.3d 696, 703 (9th Cir. 1995); United States v. Underwood, No. 94-5897, 1995 WL 241992, at *1 (6th Cir. Apr. 25, 1995) (unpublished); United States v. Garcia, 27 F.3d 1009, 1014-15 (5th Cir.), cert. denied sub nom Chavez v. United States, 513 U.S. 1009 (1994); United States v. Baker, 985 F.2d 1248, 1259 (4th Cir. 1993), cert. denied, 510 U.S. 1040 (1994); Moran, 1991 WL 125461, at *4; United

-7-

addendum) involving other kinds of drug or non-drug conspiracies having an additional element separating a more serious one from a less serious one.  This court has assumed the same in passing, United States v. Arroyo, 546 F.3d 54, 56 (1st Cir. 2008), but has not formally decided the issue.

The initial question is an abstract and strictly legal one: whether, looking to the required elements of a pair of crimes, the two crimes coincide except that to commit the greater crime, an additional ingredient (or ingredients) is necessary.  That requirement is satisfied here: a vertical "conspiracy to possess drugs with intent to distribute" can easily be said to be a "conspiracy to possess drugs" with one added element, namely, that the parties also had a shared aim that the possessed drugs then be distributed.

Of course, to justify the instruction in a particular case, there must--at a factual level--be some core of facts that is common to the scenario that the government sought to prove and the one that the defendant claims to show only a lesser included offense.  If the government charges and seeks to prove a conspiracy to possess with intent to distribute heroin in New York in 2005 but the evidence arguably showed only a conspiracy to possess in San Francisco in 2007, this would call only for an instruction that the

States v. Miller, 939 F.2d 605, 609 (8th Cir. 1991); United States v. O'Meara, 895 F.2d 1216, 1219-20 (8th Cir.), cert. denied, 498 U.S. 943 (1990).

jury not convict if the government proves a conspiracy different than that charged.  E.g., United States v. Candelaria-Silva, 166 F.3d 19, 39 (1st Cir. 1999), cert. denied sub nom Ortiz-Miranda v. United States, 529 U.S. 1055 (2000).

This is a problem that a trial judge might have to sort out in deciding whether to give a multiple conspiracy instruction, but it is not remotely present here.  Whether one looks at the greater or lesser crime in this case, the conspirators and drugs sold to Boidi are identical; the only further question is whether Boidi intended to distribute the drugs and whether the distributors shared in that aim as part of the agreement.  However this question is answered, the two offenses relate to the same underlying events.

In arguing here against the requested instruction, the government says that different witnesses could be needed to prove the lesser crime; but, in reality, to justify the instruction, the lesser "included" offense has to be a version of much the same factual scenario as the greater offense charged in the indictment with a single difference: that the added element needed for the greater offense need not be proved.  The witnesses that the government chose to prove the greater offense are the proof of the lesser included one.

Of course, the government might have different witnesses who could prove a possession conspiracy involving Boidi that was substantially different from and not included within the greater

-9-

conspiracy sought to be proved at trial; it could choose to prosecute for this crime or not, but it would not be a lesser included offense in this case. The instruction is required only where the evidence actually presented at trial would itself allow a rational jury to convict of the lesser offense rather than the greater one urged by the government. Ferreira, 625 F.2d at 1031.

We therefore hold that a possession conspiracy is a lesser included offense of a conspiracy to possess with intent to distribute and that the scenarios here overlap, but the instruction requires that a further condition be met (it can, as above, be phrased as two further conditions): that, on the evidence presented, it would be rational for the jury to convict only on the lesser included offense and not the greater one. Otherwise the instruction need not be given. Flores, 968 F.2d at 1371.

The government is right in saying that a jury on this record could not rationally have doubted that Boidi distributed drugs to DeMita. Whether or not sharing with a girlfriend is often so prosecuted, it is as much "distribution" as selling on a street corner. United States v. Cormier, 468 F.3d 63, 70 n.3 (1st Cir. 2006). Evidence as to Boidi's sharing with or selling to other persons appears in the record but is not as strong or consistent.

The evidence as to sharing with DeMita came not only from DeMita's extensive (and possibly unfriendly) testimony but also from both Soto and Vega and from defense counsel's own cross

examination of DeMita, which included questions that assumed joint cocaine use, such as "you liked to smoke it . . . so he needed more, right?"  So Boidi clearly possessed the cocaine with intent to distribute.  If he had been charged and convicted of that substantive crime, the case would be all over.

Instead Boidi was charged only with conspiracy to commit the substantive crime.  The penalties are the same, 21 U.S.C. § 846, but the government may get evidentiary and atmospheric advantages by charging conspiracy.  Here, it is true that it was "distribution" to give the drug to a girlfriend; Boidi had a continuing relationship with the dealers; and they knew that Boidi was re-distributing the drugs at least to DeMita.  Yet, on a close look, these facts do not necessarily compel a finding that the charged conspiracy occurred.

The use of conspiracy doctrine in a vertical context has caused courts unease.  In this circuit the continuing purchase and sale relationship between Soto, Vega and Boidi, and the dealers' knowledge of Boidi's re-distribution, would <u>permit</u> a jury to infer both an agreement between them that Boidi possess the drugs and the requisite intent as to distribution.[3]  But it would not <u>compel</u> a jury to find the latter element, because the "intent to distribute"

---

[3]<u>United States</u> v. <u>Moran</u>, 984 F.2d 1299, 1303-04 (1st Cir. 1993).  <u>Compare</u> <u>United States</u> v. <u>Hawkins</u>, 547 F.3d 66, 74-75 (2d Cir. 2008), <u>and</u> <u>United States</u> v. <u>Lechuga</u>, 994 F.2d 346, 350-51 (7th Cir.) (en banc) (Posner, J.), <u>cert. denied</u>, 510 U.S. 982 (1993).

had to reflect not only awareness but an agreed purpose of <u>both</u> a dealer and Boidi.

"Intent" is notoriously a trap term, conflating the distinction between knowledge and purpose. <u>See</u> <u>United States</u> v. <u>Tobin</u>, 552 F.3d 29, 32-33 (1st Cir. 2009). But a conspiracy is an agreement between two (or more) parties having a shared "objective" or "design" to commit the crime, so mere knowledge by Soto or Vega as to what Boidi would do with the drugs is not enough unless they shared Boidi's purpose to re-distribute.[4] A main rationale for making conspiracy a crime is that the shared purpose increases the likelihood of accomplishment and makes the enterprise more dangerous. <u>Moran</u>, 984 F.2d at 1302-03; <u>Developments</u>, <u>supra</u> note 7, at 924-25.

The intent "to further, promote, or cooperate in" the buyer's illegal activity "is the gist of conspiracy" and "knowledge is the foundation of intent," but "not every instance of sale of restricted goods . . . in which the seller knows the buyer intends to use them unlawfully, will support a charge of conspiracy." <u>Direct Sales Co.</u> v. <u>United States</u>, 319 U.S. 703, 711-12 (1943).

---

[4] 2 LaFave, <u>Substantive Criminal Law</u> § 12.2(c)(6), at 285 (2d ed. 2003) ("[T]here must be a common design, so that if only one party to the agreement has the necessary mental state then even that person may not be convicted of conspiracy."); <u>see</u> <u>Developments in the Law: Criminal Conspiracy</u>, 72 Harv. L. Rev. 922, 927 (1959).

Ample circuit authority confirms the need for joint purpose--neatly summed by the Second Circuit:

> Evidence that a buyer intends to resell the product instead of personally consuming it does not necessarily establish that the buyer has joined the seller's distribution conspiracy. This is so even if the seller is aware of the buyer's intent to resell. It is axiomatic that more is required than mere knowledge of the purpose of a conspiracy.

Hawkins, 547 F.3d at 74; see also Lechuga, 994 F.2d at 349; United States v. Glenn, 828 F.2d 855, 857-58 (1st Cir. 1987) (Breyer, J.).

Stake and purpose are closely related, and DeMita's share increased the frequency and quantity of Boidi's purchases. So the jury here could have found that Soto or Vega had a stake in the redistribution beyond mere knowledge of it or, put differently, that re-distribution as well as possession was a joint aim. But, by contrast to what Soto or Vega's stake would have been if Boidi were engaged in commercial re-distribution on a large scale, the inference of joint purpose to re-distribute here is far from inevitable or compelling.

The required instruction is prompted by a concern that, deprived of a lesser included option, the jury may stretch to convict the defendant of the greater crime. Flores, 968 F.2d at 1369; United States v. Balthazard, 360 F.3d 309, 320 (1st Cir. 2004). Here nothing compelled the jury to find that the suppliers and Boidi were conspiring that Boidi should possess the drugs with

-13-

intent to distribute.  The jury could rationally have convicted of the lesser conspiracy, and the instruction should have been given.

So, the conspiracy conviction cannot stand (although the government could retry the charge with the required instruction), so we turn to the consequences.  It is clear that the conspiracy conviction must be vacated, but two separate issues remain: whether a conviction on the lesser included offense may be substituted without a new trial or Boidi's consent, and what effects either vacation or substitution have on two of Boidi's other convictions.

Where a lesser included offense charge should have been given, several circuits have allowed the district court on remand, in its discretion and with the government's consent, to enter judgment of conviction on the lesser included offense where the jury necessarily found every fact required for conviction of the lesser offense.[5]  The premise is that, given the actual conviction supported by adequate evidence, the best the defendant could have obtained by the charge is conviction on the lesser included offense.

The government's answering brief urged that the district court be given this option; Boidi filed no reply brief and so is not on record as arguing that the other circuits' approach is wrong

---

[5]United States v. Burns, 624 F.2d 95, 105 (10th Cir.), cert. denied, 449 U.S. 954 (1980); United States v. Crutchfield, 547 F.2d 496, 502 (9th Cir. 1977); United States v. Whitaker, 447 F.2d 314, 322 (D.C. Cir. 1971); see also United States v. Levy, 703 F.2d 791, 794 n.9 (4th Cir. 1983).

-14-

or contesting this solution here. We think that the approach is at least colorable but leave Boidi free on remand (if the government presses the request) to argue that it is mistaken, that the necessary conditions have not been met or that the district court ought not allow it for other reasons.

As to the impact of our vacating of the drug conviction on Boidi's other convictions, Boidi's brief asserts summarily that the RICO conviction must fall because the drug conspiracy was one of the predicate acts; but the RICO conviction was supported by the jury's specific finding that the government had proven five predicate acts--three acts of embezzlement of union assets plus the conspiracy and the use of a communications facility to facilitate a drug crime.

The three embezzlement acts are legally sufficient predicates and only two are needed to support the RICO conviction. United States v. Cianci, 378 F.3d 71, 91 (1st Cir. 2004); United States v. Edwards, 303 F.3d 606, 642 (5th Cir. 2002), cert. denied, 537 U.S. 1192 (2003). Boidi has not countered this argument and no counter is obvious. Thus, the RICO conviction stands whether or not a possession conspiracy conviction is substituted on remand; but the RICO sentence--indeed, all of the sentences imposed on Boidi--will likely have to be recomputed.

The effect of vacating the drug conspiracy conviction on the communications facility conviction is more complicated. In the

-15-

indictment, the communications facility charge was tied to the conspiracy count, and the district court instructed the jury that it had to find that Boidi knowingly and intentionally used a communications facility to cause or facilitate the drug traffic offense charged in count 5 (the conspiracy). Thus, presumptively our vacation of the latter conviction undoes the former as well.

The government says that the communications conviction can be supported by a conviction for conspiracy to possess and so should be reinstated on remand if that conviction is substituted. But conspiracy to possess is a misdemeanor under federal law,[6] and so cannot supply the requisite felony to support the conviction, 21 U.S.C. §§ 843(b), 802(13); United States v. Baggett, 890 F.2d 1095, 1098 (10th Cir. 1989), although it could be re-tried if the government retries the original conspiracy charge or otherwise permissibly satisfies the felony predicate requirement.

Where multiple convictions are entered, the sentences are often driven by the most serious of the crimes; RICO, of course, is a serious crime but its sentence often reflects the underlying

---

[6]21 U.S.C. §§ 844, 846; see Lopez v. Gonzales, 549 U.S. 47, 52-54 & n.4, 59-60 (2006); Ruhbayan, 406 F.3d at 295-96; United States v. Stone, 139 F.3d 822, 830 (11th Cir. 1998); United States v. Foree, 43 F.3d 1572, 1574 (11th Cir. 1995); United States v. Sikes, No. 93-50084, 1994 WL 1260, at *3 (9th Cir. Jan. 3, 1994) (unpublished); United States v. Johnson, Nos. 92-5459, 92-5477, 1993 WL 133801 (6th Cir. Apr. 28, 1993) (unpublished); cf. 18 U.S.C. § 3559(a). United States v. David might appear to the contrary but seemingly the section 843(b) charge there was in fact tied to a conspiracy to possess with intent to distribute. 940 F.2d 722, 736 (1st Cir. 1991), cert. denied, 504 U.S. 955 (1992).

-16-

predicate acts.  U.S.S.G. § 2E1.1.  A preliminary look suggests that without the present drug conviction, Boidi might enjoy a lower ultimate sentence and that the sentences on all of the counts could be affected; what the outcome would be if the possession conspiracy conviction is substituted can be addressed by the district court and parties on remand if and when necessary.

The convictions on counts 5 and 6 are <u>vacated</u>; the convictions on the remaining counts are <u>affirmed</u>.  All of the sentences are <u>vacated</u>.  The case is <u>remanded</u> for proceedings not inconsistent with this opinion.

It is so ordered.

ADDENDUM

Conspiracy cases, other than replicas of this case, recognizing or assuming that lesser conspiracies can be included in greater ones include Johnson v. United States, No. 06-1316-pr, 2009 WL 535973, at *1 (2d Cir. 2009) (unpublished) (government conceded conspiracy to distribute is lesser included offense of conspiracy to distribute and possess with intent to distribute within 1000 feet of a school for Double Jeopardy purposes); United States v. Moore, 525 F.3d 1033, 1038-39 (11th Cir. 2008) (conspiracy to accept illegal gratuity lesser included offense of conspiracy to commit bribery); United States v. Thomas, 182 F. App'x 147, 147-48 (4th Cir. 2006) (unpublished) (conspiracy to manufacture methamphetamine lesser included offense of conspiracy to manufacture 50 grams of methamphetamine within 1000 feet of a school); United States v. Smith, 43 F. App'x 529, 532 (4th Cir. 2002) (unpublished) (conspiracy to commit unarmed bank robbery lesser included offense of conspiracy to commit armed bank robbery); United States v. Bias, Nos. 96-50483, 96-50499, 1998 WL 708772, at *1 (9th Cir. Oct. 6, 1998) (unpublished) (same); United States v. Dietz, No. 93-8073, 1994 WL 319259, at *1 (10th Cir. June 30, 1994) (unpublished) (conspiracy to transport wildlife in interstate commerce lesser included offense of conspiracy to export).