# United States Court of Appeals
## For the First Circuit

No. 14-1817

UNITED STATES OF AMERICA,

Appellee,

v.

ABDULLAHI NUR,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

[Hon. George Z. Singal, Senior U.S. District Judge]

Before

Thompson, Kayatta, and Barron,
Circuit Judges.

Robert L. Sheketoff for appellant.
Margaret D. McGaughey, Assistant United States Attorney, with
whom Thomas E. Delahanty II, United States Attorney, was on brief,
for appellee.

August 27, 2015

**KAYATTA**, **Circuit Judge**.  The United States charged Abdullahi Nur with possession of crack with intent to distribute, 21 U.S.C. § 841(a)(1).  At the conclusion of his trial, Nur's counsel asked the district court to instruct the jury that, if it did not find Nur guilty of intent to distribute it could still convict Nur of the lesser-included offense of simple possession as long as it found beyond a reasonable doubt that he was guilty of that offense.  After the district court declined the request, the jury convicted Nur of the charged offense.  We now vacate that conviction, holding that Nur was entitled to the requested instruction.

**I.**

On October 25, 2011, at 2:00 am, two police officers pulled over Nur for erratic driving.  Nur fled into the woods, where the officers apprehended him after he tripped and fell into a creek.  Nur admitted that he had been drinking that evening.  A third officer testified that, during a search of Nur's person at the scene, he found three individually-wrapped bags in Nur's sweatshirt pocket.  Split amongst the three bags were approximately seven grams of crack cocaine.[1]

One of the officers who apprehended Nur took him back to the station.  That officer testified that Nur asked him during the

---

[1] 7.27 grams.

ride whether the police would help him join the Army if he provided them with valuable information about drugs.  The officer testified that he told Nur that they would speak about it back at the station, after Nur was advised of his Miranda rights.  Once at the station, the two officers who had apprehended Nur interrogated him.[2] According to the officers' trial testimony, Nur confessed to facts that, in brief, made clear that he had been on his way to sell the crack found in his possession.  Nur also said that he had enough money to make bail back at a hotel room in Scarborough.

After concluding the interview, the officers searched Nur's hotel room with the consent of the room's other resident, Nur's girlfriend.  They discovered seventeen hundred dollars, separated into hundred dollar increments and wrapped in an elastic. In his confession at the station, Nur had said that the money was his.

At trial, Nur proved to be more than a handful, even for the very skilled trial judge assigned to the case.  Nur spoke out of turn multiple times, interrupting his own attorney and the

---

[2] Nur's station-house admissions were unrecorded even though there were two rooms equipped with recording devices in the station.  One of those rooms contained a breathalyzer, and one of the officers said that he did not "bring [Nur] [to that room] because [he] knew [he'd] be going down there shortly to administer a breath test [for Nur], and with [Nur's] breath [he] didn't want . . . it to affect the ambient air."  The other room required a combination to enter, and the officer "either didn't have [the] code or . . . didn't know it."

judge.  For reasons that are unclear on the record, the proceedings ended in a mistrial.  At the retrial, Nur opted to proceed pro se, with standby counsel sitting in attendance.  Nur fumbled through cross examinations of the government's witnesses and introduced no substantive evidence.  In closing, Nur argued that the government had not proven any part of its case beyond a reasonable doubt, contending that all the officers lied.  He argued both that he "did not possess drugs" and that he "did not intend to distribute drugs."  Nur thereupon refused to yield after exhausting his time for closing arguments.  After issuing carefully calibrated and repeated warnings, the district court held Nur in contempt and had him removed from the courtroom.  The district court thereupon appointed Nur's standby counsel as "full counsel," "in charge" of Nur's defense.

Prior to the closing arguments that led to Nur's removal and the appointment of counsel on his behalf, the district court had conducted a charging conference to review proposed jury instructions.  During that charging conference, Nur raised no relevant objections to the proposed instructions.  After Nur's removal, the district court gave those instructions, and then asked if there were any objections or proposed additions.  The following colloquy ensued:

> **Standby counsel**: Your Honor, I am in a very
> difficult position here.  I have not discussed
> this issue with my client for reasons that I

- 4 -

will not disclose to the Court at this point in time. But in my view the evidence in this case supports a lesser-included instruction for possession of cocaine base.

**AUSA**: To the extent that it matters, [at] the last trial the defendant did not want that.

**Standby counsel**: I understand that. But I -- I have no authority from him, I have no permission from him to request this, but in my view as now active counsel, the evidence supports that.

**The Court**: Mr. Nur had these proposed instructions and approved them earlier.

**Standby counsel**: He did.

**The Court**: Taking that into account, I don't think it's appropriate.

On appeal, Nur argues that the district court's failure to give the instruction allowing the jury to convict him for simple possession denied him a fair trial and constituted reversible error. In response, the government makes no claim that Nur failed to preserve his objection. The government also does not argue that Nur's counsel lacked authority to request the instruction on his behalf. Nor does the government argue that the request was tendered too late. Instead, the government efficiently argues only that Nur was not entitled to the requested instruction because he categorically denied all elements of the charge against him and, in any event, the evidence as the government views it made it irrational to acquit him of the charged offense, yet convict him of the lesser offense.

- 5 -

## II.

Our circuit's precedent dictates (and both parties here agree) that we review de novo a district court's decision whether to grant a properly raised request to instruct the jury on a lesser-included offense. United States v. Chiaradio, 684 F.3d 265, 280 (1st Cir. 2012). In evaluating "a district court's decision not to give a requested instruction[,] . . . we examine the evidence on the record and draw those inferences as can reasonably be drawn therefrom, determining whether the proof, taken in the light most favorable to the defense can plausibly support the theory of the defense." United States v. Baird, 712 F.3d 623, 627 (1st Cir. 2013) (quotation marks, alterations and citation omitted). We do not weigh the evidence, but merely inquire into its sufficiency. Id.

## III.

Federal Rule of Criminal Procedure 31 provides that a "defendant may be found guilty of . . . an offense necessarily included in the offense charged." Fed. R. Crim. P. 31(c)(1). Such an offense is known as a "lesser included offense." Chiaradio, 684 F.3d at 280. The lesser-included-offense doctrine "developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged." Keeble v. United States, 412 U.S. 205, 208 (1973); see also Kelly v. United States, 370 F.2d 227, 229 (D.C. Cir. 1966).

While the rule has its origins as an aid to the prosecution, it has long been settled that "it may also be availed of by the defense." United States v. Markis, 352 F.2d 860, 866 (2d Cir. 1965), vacated, 387 U.S. 425 (1967). See generally Keeble, 412 U.S. at 208; Sansone v. United States, 380 U.S. 343, 349 (1965); Berra v. United States, 351 U.S. 131, 134 (1956), superseded on other grounds by statute, 26 U.S.C. §§ 7201, 7203, 7207, as recognized in Sansone, 380 U.S. 343; Stevenson v. United States, 162 U.S. 313, 322-23 (1896).

Instructions on lesser-included offenses preserve the jury's fact-finding role, see, e.g., United States v. Arnt, 474 F.3d 1159, 1165 (9th Cir. 2007) ("The integrity of the jury's fact-finding role undergirds our requirement that a lesser-included offense instruction be given [at defendant's request] when supported by law and the evidence."). It also protects the defendant from some harsh realities of jury decision-making, see, e.g., Keeble, 412 U.S. at 212-13 ("[A] defendant is entitled to a lesser offense instruction--in this context or any other--precisely because he should not be exposed to the substantial risk that the jury's practice will diverge from theory. Where one of the elements of the offense charged remains in doubt, but the defendant is plainly guilty of some offense, the jury is likely to resolve its doubts in favor of conviction."). While "[a]n element of the mercy-dispensing power is doubtless inherent in the jury

- 7 -

system, and may well be a reason why a defendant seeks a lesser included offense instruction,. . . it is not by itself a permissible basis to justify such an instruction." Kelly, 370 F.2d at 229. The defendant's right to such an instruction "does not extend beyond the right of the prosecutor." Id.

The rule only applies, of course, when the offense charged actually includes a lesser-included offense, which is defined as an offense "necessarily included" in the charged offense. Fed. R. Crim. P. 31(c)(1); Schmuck v. United States, 489 U.S. 705, 716 (1989) ("Under [the 'elements'] test, one offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense."). In this case, the parties rightly agree that the offense charged (possession of crack with intent to distribute) "necessarily included" the lesser offense of simple possession of crack. The trial court was therefore required to grant Nur's request to give such an instruction to the jury if two further conditions were met: (1) "a contested fact separates the two offenses," and (2) "on the evidence presented, it would be rational for the jury to convict only on the lesser included offense and not the greater one." United States v. Boidi, 568 F.3d 24, 27, 29 (1st Cir. 2009).

The government concedes that the first condition was satisfied in this case; i.e., "a contested fact separates the two

offenses." That fact is the intent to distribute. Nur specifically argued that he "did not intend to distribute drugs."

Instead, the government argues that it would not have been rational in this case for a jury to convict Nur on the lesser, simple-possession offense while acquitting him on the greater offense because his defense was "completely exculpatory," in the sense that Nur claimed he was guilty of no offense, with the officers having lied on all material points. Clearly, though, the law cannot be that a defendant must admit to the lesser crime in order to obtain the lesser-included-offense instruction. Rather, for the defendant's position at trial to eliminate the defendant's right to insist on a lesser-included-offense instruction, that position need interact with the evidence so as to limit the scope of rational dispute to elements common to the two offenses. See Keeble, 412 U.S. at 208 ("It is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser included offense and acquit him of the greater."). To determine whether a case presents such a situation, we need to assess both the nature of the defense and the possible constructions of the evidence that are rationally possible. See United States v. Thornton, 746 F.2d 39, 48 (D.C. Cir. 1984) ("[E]ven where the defendant presents a totally exculpatory defense, the instruction should nonetheless be given if the

evidence presented by the <u>prosecution</u> provides a rational basis for the jury's finding the defendant guilty of a lesser included offense.") (emphasis in original); <u>see also</u> <u>United States</u> v. <u>Ferreira</u>, 625 F.2d 1030, 1032 (1st Cir. 1980) (the jury could rationally have convicted defendant of the lesser offense while acquitting him of the greater offense even in the absence of any express challenge by the defendant to the government's evidence tending to prove the element distinguishing the two offenses). In short, merely denying the entire charge as not believable does not automatically render irrational a conviction by the jury on only the lesser included offense.

This conclusion makes great sense because a lesser-included-offense instruction is a double-edged sword that can be wielded by the prosecution as well. <u>See</u> <u>Keeble</u>, 412 U.S. at 208. While the instruction may in theory reduce the probability of a conviction on the greater offense, it also lessens the likelihood of a complete acquittal. <u>See</u> <u>United States</u> v. <u>Szpyt</u>, 785 F.3d 31, 48 (1st Cir. 2015) (Kayatta, J., dissenting). If the defendant's denial of all culpability were itself sufficient to render irrational a jury decision that convicts only on the lesser offense, the government might be unduly restrained in its own exercise of its Rule 31 privilege. <u>Cf.</u> <u>Kelly</u>, 370 F.2d at 229 (explaining that the defendant's right to such an instruction "does not extend beyond the right of the prosecutor").

Thus, even recognizing that Nur argued that he was completely innocent because the police lied about everything, we must still ask whether the jury could have rationally found that the government did not prove beyond a reasonable doubt that Nur intended to distribute the crack, yet still have convicted him of possession. Without suggesting that a jury need or would have so found, and while acknowledging that the evidence of an intent to distribute is strong, for the following reasons we think that a jury could have so found.

The evidence in this case presented a two-act play. The compelling evidence of possession consisted of the drugs themselves and the testimony of three officers about what they saw at the scene of the arrest. The compelling evidence supporting the intent to distribute charge, in turn, consisted largely of Nur's alleged admissions later made at the station to two of those officers, not including the one who testified that he actually found the drugs on Nur at the scene of the arrest. Those admissions could have been recorded, but were not recorded for reasons that are not compelling, even if certainly plausible. A rational jury could have decided, based on its assessment of the different officers' respective testimony, that the report of Nur's statement at the station gilded the lily to fit an enhanced charge.

That still leaves the quantity of drugs involved, a fact common to both offenses. The quantity of those drugs

(approximately seven grams) was not itself contested. To convict Nur on the possession charge would be to find him in possession of that quantity. The evidence showed that seven grams was worth roughly $700, as compared to the $50 that a "street level addict" would "typically" spend on a single purchase according to a government witness. That quantity, the government argues, "permitted the jury to conclude that the drugs were not intended for personal use." That is certainly true. But the issue is whether the evidence compelled such a finding, as it would have, for example, if Nur possessed a kilo. See Thornton, 746 F.2d at 42, 48 (concluding that no one could claim that a heroin stash worth $44,000 wholesale was for personal use only). We see nothing in the testimony about the quantity of drugs "typically" purchased by a user that would compel a jury to conclude that users never bought $700 worth of drugs. The government also points to the drug's packaging in multiple dose sizes, but that suggests only that it was to be sold or was recently bought for use. The amount of cash with no apparent job was also suspicious, but not necessarily compelling without inference. The fact that drug dealers often organize their cash into $100 bundles does not compel a jury to reason in reverse that $100 bundles necessarily mean the owner of the cash is a drug dealer. In any event, the evidence that Nur owned the cash was his admission at the station.

Our conclusion concerning the evidence is limited. A jury rationally could have found that, notwithstanding proof of possession, the government did not prove an intent to distribute beyond a reasonable doubt.

The government contends, lastly, that the failure to give the requested instruction constituted harmless error. "We have previously indicated, in the context of a habeas corpus petition, that harmless-error analysis can theoretically apply to a trial court's failure to instruct a jury on a lesser included offense." United States v. Flores, 968 F.2d 1366, 1372 (1st Cir. 1992) (citing Tata v. Carver, 917 F.2d 670, 671-72 (1st Cir. 1990)). Assuming but not deciding that the harmless-error escape hatch is within reach on direct review, it would nevertheless "require highly unusual circumstances" to find harmless the failure to give a lesser-included-offense instruction, see Flores, 968 F.2d at 1372, as such a failure removes from the realm of jury decision-making a rational rendition of the record. On de novo review, drawing all inferences in the defendant's favor, such a finding would be inconsistent with what we have already stated.

## IV.

For the aforementioned reasons, we <u>vacate</u> Nur's conviction and <u>remand</u> for further proceedings consistent with this opinion.[3]

---

[3] Neither party addresses on this appeal whether the government must retry the case if it wants a conviction, or instead has the option of relying on the jury findings to support entry of conviction on only the offense of possession. <u>See</u> <u>Boidi</u>, 568 F.3d at 31.