**UNITED STATES of America, Appellee,**

**v.**

**Joyce Lee FLORES, Defendant, Appellant.**

**No. 91–1679.**

United States Court of Appeals, First Circuit.

Heard June 1, 1992.

Decided June 30, 1992.

Juan E. Alvarez, Asst. Federal Public Defender, with whom Benicio Sanchez Rivera, Federal Public Defender, San Juan, P.R., was on brief, for appellant.

Jose A. Quiles, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., Hato Rey, P.R., and Epifanio Morales Cruz, Asst. U.S. Atty., Caguas, P.R., were on brief, for the U.S.

Before SELYA, Circuit Judge, LAY,[*] Senior Circuit Judge, and O'SCANNLAIN,[**] Circuit Judge.

SELYA, Circuit Judge.

A federal jury found defendant-appellant Joyce Lee Flores guilty on a charge of assaulting a flight attendant and interfering with the performance of the attendant's duties in violation of 49 U.S.C. § 1472(j) (1988). Flores assigns error to the trial court's refusal to instruct the jury on the lesser included offense of simple assault aboard an aircraft, 49 U.S.C. § 1472(k)(1) (1988). We sustain her appeal.[1]

## I

A defendant is entitled to a jury instruction on her theory of the case so long as the theory itself is a cognizable one and the evidence of record, taken in the light most congenial to the theory, can plausibly support it. *See United States v. McGill*, 953 F.2d 10, 12 (1st Cir.1992); *United States v. Rodriguez*, 858 F.2d 809, 812 (1st Cir.1988). Because such an evaluation eschews differential factfinding, entailing no more than an inquiry into the legal sufficiency of the proof in respect to the suggested theory, appellate review is

---

[*] Of the Eighth Circuit, sitting by designation.
[**] Of the Ninth Circuit, sitting by designation.
1. In count 2 of the same indictment, Flores was charged with assaulting an FBI agent after her flight had landed and custody had attached, in violation of 18 U.S.C. §§ 111, 1114 (1988 & Supp. I 1989). The jury found her guilty on that count as well. She has, however, limited her appeal to count 1.

plenary. *See Rodriguez,* 858 F.2d at 812; *see also Stevenson v. United States,* 162 U.S. 313, 316–23, 16 S.Ct. 839, 840–43, 40 L.Ed. 980 (1896) (applying plenary standard of review *sub silentio* in connection with trial court's action on proposed lesser-included-offense instruction); *United States v. Ferreira,* 625 F.2d 1030, 1031–33 (1st Cir.1980) (similar). Hence, in evaluating the merits of an appeal from the rejection of a lesser-included-offense (LIO) instruction, it makes good sense for us, to the extent that there is record-rooted support for the defendant's version of the evidence, to recount the facts in the manner most compatible therewith (noting in general terms, however, for the sake of completeness, the government's version of the decisive incident).

## II

On December 23, 1990, appellant was en route from New York to Puerto Rico aboard a regularly scheduled American Airlines flight. Tina Quarnstrom was a flight attendant on the airplane. Her principal duties were to provide food service, retrieve trash, supply passengers with amenities such as blankets and magazines, perform safety functions in emergencies, and in her words, simply to be "nice."

The relationship between Flores and Quarnstrom was turbulent from the start. Even before takeoff, Flores questioned Quarnstrom about when the airplane would depart. She demanded to know when lunch would be served. Later, she asked the attendant for a blanket. On that occasion, Quarnstrom responded that all the blankets were taken, admonished Flores for not asking sooner, and walked away. Subsequently, Flores approached two other flight attendants and pressed them for a blanket. When her importuning fell on deaf ears, Flores angrily repeated it. She then returned empty-handed to her seat. Several minutes later, a flight attendant other than Quarnstrom brought her a blanket.

Eventually, Flores headed to the lavatory. Upon encountering Quarnstrom, Flores asked Quarnstrom why she was being so rude. Quarnstrom ignored her and walked away. According to Flores, she reached out and touched the flight attendant's arm. Quarnstrom swung around and threatened Flores with arrest if Flores struck her. Flores then returned to her seat, where she remained until the flight landed and she was placed under arrest.

The prosecution's version of the touching is much different. According to prosecution witnesses, Flores grabbed Quarnstrom by the arms (perhaps using her fingernails to draw a small amount of blood), picked her up, shook her, poked a finger into her chest several times, and told her that Flores' friends would "skin all the skin off your body." Quarnstrom testified that her watch was damaged, that she broke into tears, and that she repaired to the restroom for several minutes to regain her composure.

Whatever the truth may be concerning the incident itself, it is undisputed that the flight proceeded without further incident; the airline's schedule was not interrupted; in-flight service was not restricted or delayed; and Quarnstrom performed her assigned tasks with her customary proficiency.

Before trial began, defense counsel submitted suggested jury instructions. One such instruction proposed that the jury be given an option of finding Flores guilty of simple assault as a lesser included offense of count 1. The district judge denied the request. After the judge delivered his charge, but before the jury retired to deliberate, defense counsel again asked the court to give an LIO instruction. The court again declined to do so. A guilty verdict followed.

## III

At the outset, we dispose of a threshold matter. The government invites us to review the denial of the LIO instruction only for plain error on the ground that appellant failed to mouth the word "objection" in her timely critique of the court's charge. Because the government's ap-

proach confuses pragmatic literalism with stony formalism, we decline the invitation.

While a party seeking to object to jury instructions must do so "before the jury retires to consider its verdict, stating distinctly the matter to which that party objects and the grounds of the objection," Fed.R.Crim.P. 30, and while we insist upon "strict adherence to the literal requirements of Criminal Rule 30," *United States v. Arias–Santana*, 964 F.2d 1262, 1268 (1st Cir.1992), the word "objection" does not have talismanic significance. In this case, appellant put the trial court on particularized notice at the appropriate time, i.e., after the charge was delivered but before the jury retired to consider its verdict, about what was wrong with the charge and what should be done to correct it. No more was exigible. *See, e.g., United States v. Kaplan*, 832 F.2d 676, 682 (1st Cir.1987) (objection to charge was sufficient; although counsel did not "repeat the magic word 'objection' [he] did what Rule 30 required of him, *i.e.*, put the trial judge on *notice* so that a possible error could be corrected before the deliberation process began") (emphasis in original), *cert. denied*, 485 U.S. 907, 108 S.Ct. 1080, 99 L.Ed.2d 239 (1988); *United States v. Coady*, 809 F.2d 119, 123 (1st Cir.1987) (an objection to a jury instruction is sufficient so long as it is registered "at a time and in a (sufficiently particularized) manner that enables the trial judge intelligently to appraise the soundness of the position asserted, and if need be, correct the charge to avoid injustice").

## IV

■ The Criminal Rules specifically provide that a "defendant may be found guilty of an offense necessarily included in the offense charged." Fed.R.Crim.P. 31(c). This device does not so much protect the government as it protects a defendant from an improper conviction in situations where a jury, although dubious about whether the prosecution has proved an indispensable element of the crime charged in the indictment, nevertheless considers the defendant to be guilty of *some* crime—and is, therefore, reluctant to acquit. *See Schmuck v. United States*, 489 U.S. 705, 717 n. 9, 109 S.Ct. 1443, 1451 n. 9, 103 L.Ed.2d 734 (1989); *Keeble v. United States*, 412 U.S. 205, 212–13, 93 S.Ct. 1993, 1997–98, 36 L.Ed.2d 844 (1973). Under Rule 31(c), a reviewing court should use an "elements test" to determine when a LIO instruction is appropriate in a given case. *See Schmuck*, 489 U.S. at 716, 109 S.Ct. at 1450; *United States v. Mena*, 933 F.2d 19, 29 (1st Cir.1991). To pass the test, all the elements of the lesser included offense must be elements of the charged offense—but the charged offense must include at least one additional element.

■ Here, appellant's claim that she was entitled to an LIO instruction implicates the statutory provisions set forth in the margin.[2] Her remonstrance is straightforward. She says that the offense of conviction has four elements: (1) assaultive conduct (2) occurring aboard an aircraft (3)

---

**2.** The statute of conviction provides in relevant part:

> Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, assaults, intimidates, or threatens any flight crew member or flight attendant (including any steward or stewardess) of such aircraft, so as to interfere with the performance by such member or attendant of his duties or lessen the ability of such member or attendant to perform his duties, shall be fined not more than $10,000 or imprisoned not more than twenty years, or both.

49 U.S.C. § 1472(j). Appellant claims that simple assault is a lesser included offense of the offense of conviction, citing a statute that provides in relevant part:

> Whoever, while aboard an aircraft within the special aircraft jurisdiction of the United States, commits an act which, if committed within the special maritime and territorial jurisdiction of the United States ... would be in violation of section 113 ... [of] Title 18 shall be punished as provided therein.

49 U.S.C. § 1472(k)(1). To complete the picture, the incorporated statute provides in relevant part:

> [w]hoever, within the special maritime and territorial jurisdiction of the United States, is guilty of an assault shall be punished as follows ...
>
> (e) Simple assault, by fine of not more than $300 or imprisonment for not more than three months, or both.

18 U.S.C. § 113.

within the jurisdiction of the United States (4) which interferes with a flight attendant in the performance of her duties.[3] *See* 49 U.S.C. § 1472(j). Building on this theme, she asseverates (a) that the jury, if properly instructed, could have found her guilty of simple assault, *see* 49 U.S.C. § 1472(k)(1); and (b) that simple assault is a lesser included offense of the offense of conviction because simple assault requires proof of only three elements—identical to the first three elements under section 1472(j)—without requiring proof of the fourth element, interference with the target's duties.

## V

The government's first argument in opposition to the appropriateness of an LIO instruction is that section 1472(k)(1) applies only to assaults on passengers and for that reason cannot be a lesser included offense within the compass of section 1472(j).

As support for this proposition, the government, for the most part, cuts and pastes snippets from the legislative history of the 1961 amendments to the Federal Aviation Act of 1958. It points out that Congress intended section 1472(j) to protect aircraft personnel from actions which might impair the accomplishment of their duties. *See* H.R.Rep. No. 958, 87th Cong., 1st Sess. (1961), *reprinted in* 1961 U.S.C.C.A.N. 2563, 2566, 2570. But, this is mere lollygagging; it does not allow us to conclude either that section 1472(j) covers every assault on aircraft personnel or that

section 1472(k)(1) covers assaults on passengers only.

■ Moreover, the prosecution's approach turns the accepted canons of statutory construction upside down. It is settled beyond peradventure that a court "will resort to the legislative history and other aids of statutory construction only when the literal words of the statute create ambiguity or lead to an unreasonable interpretation." *United States v. Charles George Trucking Co.*, 823 F.2d 685, 688 (1st Cir. 1987) (quoting *Massachusetts Fin. Serv., Inc. v. Securities Investor Protection Corp.*, 545 F.2d 754, 757 (1st Cir.1976), *cert. denied*, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977)). Section 1472(k)(1) is not at all ambiguous. Read naturally, its reach is not restricted to assaults on passengers. So read, the statute produces a perfectly sensible result. That ends the inquiry.[4] We will not join the government either in indulging resupinate reasoning or in glorifying selectively culled legislative history at the expense of plain meaning.

## VI

■ The prosecution's second argument is that any assault on a flight attendant *necessarily* interferes with the attendant's duties. Thus, its thesis runs, the elements required to be proven for a conviction under section 1472(j) are identical to those which must be proven under section 1472(k)(1).[5] The plain language of the statute answers this question inferentially, for if the government's claim is correct, then the "interference" language in section

---

**3.** The "interference" element of the crime may be satisfied by proof of either an interference with the target's duties *or* a lessening of the target's ability to perform his or her duties. 49 U.S.C. § 1472(j). We use the generic term "interference" to cover both aspects.

**4.** To be sure, the government also points to a single decided case, *United States v. Meeker*, 527 F.2d 12 (9th Cir.1975), which refers to section 1472(k)(1) as covering passengers. *See id.* at 15. *Meeker* does not hold, however, that section 1472(k)(1) is in any way *restricted* to assaults on passengers.

**5.** We note with some dismay that the government has come belatedly to the claim that interference is to be presumed and is not a distinct

element of a violation of 49 U.S.C. § 1472(j). At trial, the prosecutor repeatedly referred to interference as an element of the offense. In his summation, he told the jury that "the last element we have to prove ... is interference with the flight attendant." He likewise submitted a proposed jury instruction that described the prosecution's burden "to prove beyond a reasonable doubt not only that Flores assaulted, threatened or intimidated Quarnstrom, but that her actions interfered with the performance of Quarnstrom's duties." Thus, the government seems to be playing fast and loose in advocating one theory in the district court and then shifting to a radically different theory on appeal.

1472(j) is purposeless surplusage. Courts should not lightly read entire clauses out of statutes, but should, to the exact contrary, attempt to give meaning to each word and phrase. *See, e.g., Fidelity Fed. Sav. & Loan Ass'n v. De La Cuesta,* 458 U.S. 141, 163, 102 S.Ct. 3014, 3027, 73 L.Ed.2d 664 (1982); *Wadsworth v. Whaland,* 562 F.2d 70, 78 (1st Cir.1977), *cert. denied,* 435 U.S. 980 and 981, 98 S.Ct. 1630, 56 L.Ed.2d 72 (1978).

The relevant legislative history confirms this inference. In discussing subsection (j), the House Report states:

> While other provisions of this legislation provide punishment for various acts which, in some instances, may impair the ability of aircraft personnel to perform their duties, it is believed that this subsection relating specifically to this subject is desirable and necessary. On an aircraft in flight the ability of its personnel to function efficiently is vitally important to the operation of the aircraft and the safety of those on board the aircraft.

H.R.Rep. No. 958 *supra,* 1961 U.S.C.C.A.N. at 2570. This passage strongly suggests that Congress intended to allow punishment of assaults against aircraft personnel under various subsections of section 1472, while at the same time designing subsection (j) specifically to cover those acts which also interfered with the ability of crew members and other airline personnel to perform their official duties.

The case law, though scanty, lends further support to this reading of the statute. In *United States v. Tabacca,* 924 F.2d 906, 910–11 (9th Cir.1991), the Ninth Circuit held that, while section 1472(j) is not limited to interference with safety-related duties, it requires at a minimum that the assault, intimidation or threat interfere with the performance of some part of the flight attendant's duties. In a similar vein, we wrote a decade ago that section 1472(j) "defines the crime not simply as an assault, an act of intimidation, or a threat, but rather as any one of those activities, *insofar as it 'interfere[s] with the performance' by the flight crew of its duties."*

*United States v. Hall,* 691 F.2d 48, 50 (1st Cir.1982) (emphasis supplied).

We conclude, without serious question, that interference with the performance of the crew member's or flight attendant's duties is an essential element of a criminal charge under 49 U.S.C. § 1472(j). Hence, while assaults on flight attendants occurring within the special aircraft jurisdiction of the United States are criminalized under both 49 U.S.C. § 1472(j) and 49 U.S.C. § 1472(k)(1), conviction under the former statute requires proof of a distinct element not required for conviction under the latter statute. We hold, therefore, that simple assault on a flight attendant under section 1472(k)(1) is a lesser included offense of assault that interferes with a flight attendant's duties under section 1472(j).

## VII

This brings us to the heart of the matter: whether the evidence of record, viewed in the most favorable light, could fairly have supported the giving of the LIO instruction that the defendant repeatedly requested. We think that it did.

A jury instruction on a lesser included offense is required only if "the evidence at trial [is] such that a jury could rationally find the defendant guilty of the lesser offense, yet acquit him of the greater." *Schmuck,* 489 U.S. at 716 n. 8, 109 S.Ct. at 1450 n. 8; *see also Ferreira,* 625 F.2d at 1031. If, in this case, the jury chose to credit Flores' version of her encounter with Quarnstrom, it could plausibly have concluded that there was no meaningful interference with the performance of Quarnstrom's duties—or, at the very least, that such interference had not been established beyond a reasonable doubt. In other words, the jury could have believed that Flores' physical contact with the flight attendant was so fleeting and slight that it could not conceivably have interfered with the latter's performance of her duties.

To say more would be to paint the lily. Whether or not Flores' actions interfered measurably with Quarnstrom's perform-

ance of her assigned duties was, on this record, a jury question. The evidence permitted—although it surely did not compel—a rational jury to find a failure of proof on the element of interference. It was error to omit the requested LIO instruction.

## VIII

■ In its brief, the government makes a feeble effort to persuade us that any error in respect to the requested LIO instruction was harmless. We have previously indicated, in the context of a habeas corpus petition, that harmless-error analysis can theoretically apply to a trial court's failure to instruct a jury on a lesser included offense. *See Tata v. Carver*, 917 F.2d 670, 671–72 (1st Cir.1990). Assuming, *arguendo*, that the same rubric has pertinence on direct review of a federal conviction, *but cf. Rogers v. Carver*, 833 F.2d 379, 381 (1st Cir.1987) (although court of appeals might be critical of jury instructions on direct review, the legal standard is "quite different" on habeas review of state-court proceedings), *cert. denied*, 485 U.S. 937, 108 S.Ct. 1116, 99 L.Ed.2d 276 (1988), it would require highly unusual circumstances for a reviewing court to find harmless error when a trial court wrongly refuses to give a lesser-included-offense instruction. On this record, no such finding can flourish.

There is no point in belaboring the obvious. The prosecution's argument boils down to a claim that the jury would probably not have believed Flores' account of what transpired.[6] Although that may be

so, it is entirely beside any relevant point. When, as here, the evidence is sufficient to require that the defendant's theory of the case be submitted to the jury, the court cannot pretermit such consideration either because it would have rejected the theory in a bench trial or because it believes that a discriminating jury would have been likely to follow the same course. *Stevenson*, 162 U.S. at 323, 16 S.Ct. at 842; *Rodriguez*, 858 F.2d at 812. At any rate, on this scumbled record we are not prepared to speculate as to what credibility judgments the jury may have made. Without such speculation, we cannot say that the error in this case was harmless.[7]

## IX

We need go no further. Appellant, having interposed a timely and specific request and objection, was entitled to a jury instruction on simple assault under 49 U.S.C. § 1472(k)(1) because that offense is a lesser included offense of assault under 49 U.S.C. § 1472(j) and the trial evidence was such as to permit a jury rationally to find that the distinctive element of the greater (charged) offense had not been proven. Since the district court's failure to charge on the lesser included offense was not harmless, we vacate appellant's conviction on count 1 of the indictment and remand for further proceedings not inconsistent herewith.

*So Ordered.*

---

6. We note that there was some modest bolstering of Flores' testimony both by other evidence and by the absence of certain evidence. On the one hand, there was evidence that food service was not delayed or curtailed in any way; that Flores did not have to be restrained or removed from her assigned seat; and that the flight landed on schedule. On the other hand, there was no evidence that Quarnstrom was faced with, or required to confront, any emergencies; that her participation in serving food, picking up trash, caring for passengers, or the like was hampered; or that any of her duties went unperformed.

7. There are two yardsticks for measuring harmless error in a criminal case. The more stringent standard, applicable mainly to constitutional cases, requires the government to demon-

strate beyond a reasonable doubt that the error did not influence the verdict. *Chapman v. California*, 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967); *United States v. Argentine*, 814 F.2d 783, 789 (1st Cir.1987). The less stringent standard, applicable mainly to trial errors which are not of constitutional dimension, permits a conviction to stand so long as it can be said "with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error." *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946). We need not choose between them; under either yardstick, the error in this case was not harmless.